```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROBERT WHEELER AND JO-ANNA                      :
RODRIGUEZ-WHEELER,
                                                :
                      Plaintiffs,
                                                :
          -against-                                        MEMORANDUM AND ORDER
                                                :
CITIGROUP, CITIBANK, CITIMORTGAGE                           11 Civ. 4721 (KNF)
AND CITIFINANCIAL, MORTGAGE                     :
ELECTRONIC REGISTRATION SYSTEMS,
MERSCORP,                                       :

                      Defendants.               :
------------------------------------------------------------X
CITIGROUP, CITIBANK, CITIMORTGAGE               :
AND CITIFINANCIAL, MORTGAGE
ELECTRONIC REGISTRATION SYSTEM AND              :
MERSCORP,
                                                :
                      Counter Claimants,
                                                :
          -against-
                                                :
ROBERT WHEELER AND JO-ANNA
RODRIGUEZ-WHEELER,                              :

                      Counter Defendants.       :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
```

Before the Court is the defendants' motion to dismiss for lack of subject-matter jurisdiction, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure (Docket Entry No. 135). The plaintiffs oppose the motion.

## BACKGROUND

On July 8, 2011, the plaintiffs, proceeding pro se, commenced this action for damages against Citigroup, Citibank, CitiMortgage and CitiFinancial (collectively "Citi"), alleging

1

violations of the: (i) Real Estate Settlement Procedures Act, 12 U.S.C. § 12601 et seq; and (ii) Fair Credit Reporting Act, 15 U.S.C. §1381 et seq. The plaintiffs also alleged breach of contract, negligence, trespass, larceny and vandalism. On November 8, 2011, the plaintiffs filed their first-amended complaint, asserting: (a) breach of contract; (b) breach of the implied covenant of good faith and fair dealing; (c) promissory estoppel; (d) trespass; (e) larceny; and (f) vandalism. On January 30, 2012, the plaintiffs filed their second-amended complaint, joining Mortgage Electronic Registration Systems ("MERS") and MERSCORP as defendants, and asserting the following claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) violation of New York Real Estate Recording laws; (5) "Attempting to Foreclose without Standing"; (6) trespass; (7) larceny; and (8) vandalism. On June 1, 2012, the plaintiffs filed their third-amended complaint, asserting the following claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) trespass; (5) larceny; (6) vandalism; (7) forgery of a mortgage assignment; (8) initiating a foreclosure without standing; (9) violation of New York Real Estate Recording laws; (10) mortgage nullification; (11) "MERS Encourages Servicers to Illegally Retain Notes"; (12) "MERS® eMortgages and eNotes are Illegal in New York"; (13) forgery of a promissory note; (14) deceptive acts and unlawful practices; and (15) punitive damages. On September 20, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned for all purposes.

In their third-amended complaint, the plaintiffs allege that, on March 8, 2007, they entered into a home mortgage loan agreement with CitiMortgage, memorialized by the "Plaintiff's 'wet-ink' signature on the promissory note and the mortgage contract." The plaintiffs assert that CitiMortgage, as a Home Affordable Modification Program ("HAMP") participant,

2

entered into a written agreement with them, "known as the Trial Period Plan Agreement ('TPP Agreement')", by which CitiFinancial "agreed to a finite 'trial period,' and promised that compliance with the TPP Agreement would result in the tender of a permanent loan modification required under [HAMP] rules." The plaintiffs contend that they complied with the terms of the trial period plan, by "submitting the required documentation and making the three HAMP trial payments required under the Trial Period Plan." According to the plaintiffs, CitiMortgage advised them to continue making "the reduced payments while they were awaiting the permanent modification documents to be generated through the originator and lender Defendant CitiMortgage as required under their Servicer Participation Agreement ["SPA"] and HAMP guidelines." The plaintiffs maintain that they continued to make "the reduced HAMP payments directly to the servicer Defendant CitiMortgage on time, as agreed," and "re-submitted the required documentation an additional eight times and made an additional seven payments directly to the servicer while waiting for the permanent modification documentation promised by the servicer, Defendant CitiMortgage." However, the plaintiffs assert, CitiMortgage "failed to meet their contractual obligation to tender a permanent modification," before the plaintiffs "became permanently displaced from the home by a municipal water main break on June 3, 2010."

      Thereafter, CitiMortgage commenced a foreclosure action, "as 'assignee' of Defendant Mortgage Electronic Registration Systems." The plaintiffs assert that they "were never served in the electronic foreclosure matter and were only alerted to the invalid assignment by this agent's attempt to 're-assign' their electronic note using a known robo-signer in an effort to perfect the original lean [sic] on the asset." The plaintiffs maintain that the defendants had no authority to commence the foreclosure action, since "they are not the legal owner or the holder of the 'wet-ink' promissory note and 'wet-ink' mortgage instrument physically signed by each of the

Plaintiffs Wheeler." According to the plaintiffs, they "were alerted to the dual tracking [of the mortgage loan] by Defendants after discovering on a routine visit to the home there had been a break in and burglary on May 4, 2011 by employees of a fourth sub-contractor for the servicer Defendant CitiMortgage, a third-party 'property preservation' contractor for Defendants MERSCORP, Safeguard Properties." Mortgage Electronic Registration Systems and MERS created "an unregulated and completely opaque electronic mortgage registry, the 'eRegistry', outside the Westchester County recording system purporting to reflect actual mortgage interests." The plaintiffs assert that, as a result, the defendants avoid "all subsequent recording fees and municipal taxes after automatically replacing the 'wet ink' promissory note and the 'wet ink' mortgage instrument for members immediately at closing creating electronic records and data pointers in their place." According to the plaintiffs, the defendants also circumvent "recording statutes" and engage "in an electronic mortgage exchange purporting to trade the so-called 'eNotes' and 'eMortgages' as negotiable bearer instruments." The plaintiffs assert that the assignment by Mortgage Electronic Registration Systems is invalid, and "Defendants [sic] CitiMortgage dual tracking of the mortgage loan by negotiating a modification with Plaintiffs while simultaneously generating a 'servicer-driven' default in the background through their loss mitigation unit of servicer Defendant CitiMortgage was deceptive and adversely affected the Wheelers." The plaintiffs maintain that the defendants' actions "collectively thwarted the purpose of [HAMP] and are illegal under New York State law."

In the parties' joint pretrial order, the defendants contended that the plaintiffs do not have a private right of action to assert a violation of HAMP or SPA. The Court directed the plaintiffs to brief the issue whether HAMP provides a private right of action and the defendants to respond (Docket Entry No. 111). The plaintiffs submitted their memorandum of law, contending "it is

4

well established that HAMP does not provide for a private right of action," and that their action is based on violations of Sections 493, 1341, 1343, 513 and 514 of Title 18, United States Code. In their response, the defendants challenged the plaintiffs' assertion of diversity jurisdiction in this action. They also contended that the plaintiffs do not have a "private right of action under federal criminal statutes unless specifically granted by the statute."

On December 21, 2012, the Court directed the plaintiffs to submit evidence establishing that diversity jurisdiction exists and the defendants to submit any countervailing evidence (Docket Entry No. 141). On the same day, the defendants made a motion to dismiss for lack of subject-matter jurisdiction, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, asserting no diversity jurisdiction exists because several defendants "are also New York citizens" like the plaintiffs, and no federal question jurisdiction exists because HAMP does not provide for a private right of action and none of the plaintiffs' claims arises under federal law. The plaintiffs responded to the motion by a letter, dated December 23, 2012, in which they: (a) state "it is clear that in order to secure subject matter jurisdiction for criminal behavior in a federal civil suit we will require the private right of action afforded us in 18 USC § 1964"; (b) seek leave to amend the third-amended complaint "to conform [it to] the heightened pleading standard of Fed. R. Civ. P. Rule 9(b) . . . to plead with particularity a chain of causation to establish proximate cause of damages under RICO" (Racketeer Influenced and Corrupt Organizations Act); and (c) "request until January 16, 2013 to file it and ask that Defendants' Motion to Dismiss be dismissed or stayed until Plaintiffs' amended complaint is filed." By a letter, dated December 26, 2012, the defendants opposed the plaintiffs' application for leave to amend the third-amended complaint contending: (i) it is unduly delayed; (ii) the plaintiffs wish to add a new cause of action; (iii) the RICO claim cannot be added as a basis for jurisdiction; and (iv) the defendants will be prejudiced

5

by the amendment. In their reply letter, dated January 29, 2013, the plaintiffs "acknowledge that lack of complete diversity exists among the parties as plead in the Third Amended Complaint" and contend "this pleading defect can be cured in short order by removing all of the Citi Defendants except Citibank, a national association whose mortgage unit also named 'CitiMortgage' was engaged in securitizing the Plaintiff's mortgage loan."

Subsequently, the Court directed the plaintiffs to file a memorandum of law addressing whether: (1) the nondiverse parties are dispensable; and (2) prejudice will attend any party perforce of the dismissal of nondiverse parties. The defendants were directed to file a responsive memorandum of law, and the plaintiffs were permitted to file a reply (Docket Entry No. 151). The parties made their respective submissions. The Court considered the parties' submissions related to subject-matter jurisdiction in determining the defendants' motion to dismiss for lack of subject-matter jurisdiction.

## DISCUSSION

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "[T]he party asserting subject-matter jurisdiction . . . has the burden of proving its existence by a preponderance of the evidence." Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 65 (2d Cir. 2012). "That party must allege a proper basis for jurisdiction in his pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations, or if the court sua sponte raises the question." Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998) (internal citation omitted). In adjudicating a motion to dismiss for lack of subject-matter jurisdiction, "a district court may consider evidence outside the pleadings." Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). "The existence of

federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830, 109 S. Ct. 2218, 2222 (1989). "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473-74, 127 S. Ct. 1397, 1409 (2007).

*Federal Question Jurisdiction*

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The plaintiffs' third-amended complaint asserts thirteen claims indicated above, including "punitive damages," which is a remedy, not a claim. The only federal law invoked in the complaint is HAMP, the United States Department of the Treasury program codified within the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201-5261. However, HAMP does not create a private right of action for borrowers against loan servicers. See Miller v. Chase Home Finance, LLC, 677 F.3d 1113, 1116 (11th Cir. 2012) (no express or implied private right of action under HAMP); Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 559 n.4 (7th Cir. 2012) ("HAMP does not create a private federal right of action for borrowers against servicers" and "borrowers were not intended third-party beneficiaries of the SPAs"); Griffith-Fenton v. Chase Home Finance, No. 11 CV 4877, 2012 WL 2866269, at *3 (S.D.N.Y. May 29, 2012) ("HAMP does not provide a private cause of action, nor may plaintiff enforce the agreement as a third-party-beneficiary."). Moreover, the plaintiffs concede that HAMP provides no private right of action. See Docket Entry No. 126. Accordingly, the Court finds that HAMP does not provide a private right of action. Since the allegations in the third-amended complaint do not suggest any other basis for federal question jurisdiction pursuant to 28 U.S.C. § 1331, the Court finds that the plaintiffs did

not satisfy their burden of establishing federal question jurisdiction.

***Diversity Jurisdiction***

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Thus, "diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships." Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001). "In an action in which jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced." Universal Licensing Corp. v. Paola Del Lungo S.P.A., 293 F.3d 579, 581 (2d Cir. 2002). "For the purposes of this section . . . a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is

> the place where a corporation's officers direct, control, and coordinate the corporation's activities. . . . And in practice, it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

Hertz Corp. v. Friend, 559 U.S. 77, __, 130 S. Ct. 1181, 1192 (2010).

In their third-amended complaint, the plaintiffs asserted diversity jurisdiction pursuant to 28 U.S.C. § 1332. They alleged that they are citizens of New York and

> Defendant Citigroup Inc., New York, New York ("Citigroup"), a registered bank holding company, owns and controls Citibank, N.A., Las Vegas, Nevada ("Citibank"), a national bank that owns CitiMortgage, Inc., O'Fallon, Missouri ("CitiMortgage"), an operating subsidiary of Citibank; and Citigroup owns and controls CitiFinancial Credit Company, Baltimore, Maryland ("CitiFinancial"), a nonbank subsidiary of the holding company.

8

The plaintiffs also asserted that: (i) "Defendant MERSCORP, Inc. is a Delaware corporation with its principal place of business in Vienna, Virginia"; (ii) "Defendant Mortgage Electronic Registration Systems, Inc. (together with MERSCORP a/k/a MERSCORP Holdings Inc., 'MERS') is a Delaware corporation with a principal place of business in Reston, Virginia"; and (iii) "Mortgage Electronic Registration Systems, Inc., ('MERS' is a wholly owned subsidiary of MERSCORP Holdings Inc. and has done and is doing business in New York State."

According to the defendants,

> Plaintiffs and Defendants are in agreement that two of the named Defendants, CitiMortgage, Inc. and CitiFinancial, Inc. are domestic New York Corporations, and that Citigroup, Inc.'s principal place of business is in New York. . . . Because the Plaintiffs, the Wheelers, are citizens of New York, without any further examination of the citizenship of the other Defendants, this Court lacks subject matter jurisdiction as complete diversity among the parties does not exist.

The plaintiffs submitted evidence that Citigroup's "principal executive office" is in New York and CitiMortgage and CitiFinancial are incorporated in New York. They concede that these are nondiverse parties whose presence in the action destroys complete diversity of citizenship for the purpose of diversity jurisdiction. Based on the evidence in the record relevant to subject-matter jurisdiction, the Court finds that the adverse parties in this action are not completely diverse in their citizenship because defendants Citigroup, CitiMortgage and CitiFinancial are citizens of New York, as are the plaintiffs. Accordingly the Court finds that no subject-matter jurisdiction exists, unless the lack of diversity jurisdiction can be cured. The plaintiffs contend that "nondiverse parties in this action are dispensable and their removal will not prejudice the course of the litigation or any of the dismissed or remaining parties to the action."

9

*Severance of Jurisdictional Spoilers Under Rule 21 of the Federal Rules of Civil Procedure*

*Legal Standard*

Under certain circumstances, a district court may cure jurisdictional defects: "(a) by establishing *ex post* the original existence of the required jurisdictional facts, or (b) by dismissing jurisdictional spoilers, *nun pro tunc*, pursuant to Fed. R. Civ. P. 21." Herrick Co., 251 F.3d at 329 (internal citations omitted). Section 1653 of Title 28, United States Code, allows the courts "to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts." Newman-Green, Inc., 490 U.S. at 832, 109 S. Ct. at 2222. Section 1653 does not apply here because the jurisdictional facts alleged in the third-amended complaint are defective, not inadequate.

"On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." Newman-Green, Inc., 490 U.S. at 832, 109 S. Ct. at 2223. In exercising that authority, courts "should carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." Id. at 838, 109 S. Ct. at 2225. Since Rule 21 permits dismissal of a dispensable nondiverse party but does not provide the standard for determining that the party is dispensable, courts apply Rule 19(b) factors for determining when the party is "indispensable" to make a determination of "dispensability" for the purpose of Rule 21. See CP Solutions PTE, LTD. v. General Electric Co., 553 F.3d 156, 159 (2d Cir. 2009). Rule 19(b)'s factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's

>absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

>Fed. R. Civ. P. 19(b).

"[T]he question of indispensability is a matter committed to the district court's discretion." CP Solutions PTE, LTD., 553 F.3d at 161.

### *Plaintiffs' Contentions*

The plaintiffs contend that "CitiFinancial is mentioned in only two paragraphs 1 and 44 in order to define CitiFinancial as a member of the collective Citi defendants," and it is not a required party under Rule 19(a)(1)(A) and Rule 19(a)(1)(B) of the Federal Rules of Civil Procedure; thus, its dismissal will not prejudice any party. They assert that "Citigroup is not a required party under Rule (19)(a)(1)(A) as all defendants are jointly and severally liable and the court can accord complete relief through Citigroup's wholly owned and controlled subsidiary Citibank." Moreover, according to the plaintiffs, Citigroup is not a required party, under Rule 19(a)(1)(B)(i) and Rule 19(a)(1)(B)(ii), and its dismissal would not be prejudicial to any party since its "interests are identical to Citibank's interests and can be protected through Citibank."

The plaintiffs maintain that CitiMortgage "is not a required party under Rule 19(a)(1)(A) as all defendants are jointly and severally liable and the court can accord complete relief through CitiMortgage's parent Citibank," and it is not a required party under Rule 19(b)(1)(B)(ii). However, they assert that "CitiMortgage would be a required party under Rule 19(a)(1)(B)(i) as the subject of the Third Amended Complaint is mortgage fraud due to, inter alia, [sic] the illegal business model and practices of CitiMortgage." According to the plaintiffs, "[d]ismissal of CitiMortgage from the action would as a practical matter impair or impede CitiMortgage's ability to protect their interests." The plaintiffs contend that even though CitiMortgage should be

11

"joined if feasible," its joinder would deprive the court of subject-matter jurisdiction. They maintain that:

> CitiMortgage could be prejudiced by its own absence by incurring the risk of multiple or otherwise inconsistent obligations and Citibank could be prejudiced by taking sole responsibility for a liability created by the absent CitiMortgage. Plaintiffs could be prejudiced in terms of non-monetary relief to prevent future fraud against others caused by CitiMortgage as CitiMortgage would not be before the court and hence would not be bound by the judgment rendered. . . . Any prejudice CitiMortgage might suffer can be avoided by dismissing them with prejudice and any prejudice suffered by Citibank could always be lessened by bringing a complaint against its own subsidiary unit CitiMortgage. . . . Plaintiffs contend that a judgment rendered in CitiMortgage's absence would be adequate as the business model and practices of CitiMortgage are the mortgage business model and mortgage practices of Citibank especially if . . . fraud is involved. . . . Plaintiffs contend that there is not an adequate remedy if this action were dismissed for nonjoinder other than to refile the action without the nondiverse parties or file the action plead as a violation of 18 U.S.C. §1964 which would provide federal subject matter jurisdiction.

***Defendants' Contentions***

The defendants contend that, "[i]n their Submission, Plaintiffs concede at several points that CitiMortgage is an indispensable party and that its dismissal would prejudice it and the other parties," and their "proposal to create jurisdiction by dismissing CitiMortgage should be denied." According to the defendants, it would be prejudicial "to allow outrageous allegations of criminal conduct against an absent party in order to create jurisdiction. Plaintiffs' selection of the wrong forum should not result in such an egregious consequence." Moreover, the plaintiffs' "contention that Citibank, N.A. can be the sole Citi Defendant because 'the business model and practices of CitiMortgage are the mortgage business model and mortgage practices of Citibank' is not corroborated." The defendants contend that "CitiMortgage, Inc. is the sole Defendant whose interests are at stake in the instant litigation as it is the owner and holder of the Note and Mortgage," and its absence from this action "will put this Defendant in a position where it is unable to protect its interest in the Note and Mortgage." For example, a "judgment in this Court to

nullify the mortgage and relating to CitiMortgage conduct will affect CitiMortgage's rights and ability to foreclose on the Note and Mortgage in state court and impact other litigation." Furthermore, CitiMortgage "has further interests in addressing the Plaintiffs' allegations that CitiMortgage, Inc. does not have standing to commence a foreclosure action in state court or to otherwise collect on the Note." The defendants contend that "should this action be discontinued against CitiMortgage, Inc., there is the possibility that the remaining MERS Defendants could bring a second action against CitiMortgage, Inc. seeking contribution."

The defendants contend that CitiMortgage Inc.'s prejudice cannot be lessened, as the plaintiffs suggest, based on the plaintiffs' "theory that CitiMortgage, Inc. and Citibank, N.A. are jointly and severally liable" because "no such rule is applicable" here. The plaintiffs' "suggestion that Citibank, N.A. seek contribution from CitiMortgage, Inc. is legally unsound and an undue burden on both Defendants and on the Courts," given "that contribution is not available where the liability upon which the contribution claim is based derives solely from breach of contract," as is the case here. Moreover, the defendants contend, CitiMortgage "asserts a counterclaim for breach of contract against the Plaintiffs," and if it is dismissed from the action, "it will be subject to an adjudication on the counterclaim relating to its rights without the opportunity to present evidence." The defendants maintain that complete relief cannot be afforded in CitiMortgage's absence because, as the owner and holder of the note and mortgage, "it is the only party capable of providing the relief the Plaintiffs seek." Without CitiMortgage, the plaintiffs have no viable case and its dismissal will prejudice the plaintiffs' standing to bring this action. The defendants contend the plaintiffs have an adequate remedy in the state court if this action is dismissed.

The defendants maintain that the plaintiffs' conclusory allegation that Citibank and CitiMortgage are "alter ego" corporations, is not supported by any evidence. The defendants

contend that "[t]he fact that CitiMortgage is a subsidiary of Citibank alone is insufficient" to support the plaintiffs' alter ego theory. Moreover, Citibank, N.A. and CitiMortgage, Inc. are not jointly and severally liable and the plaintiffs "inconsistently allege that while Citibank is CitiMortgage's alter ego, it can reduce any prejudice suffered by bringing an action against CitiMortgage." The defendants maintains that the Court should protect the interests of CitiMortgage by not dismissing it as a party to this action.

### *Plaintiffs' Reply*

The plaintiffs contend in reply that "CitiMortgage and Citibank are jointly and severally liable" because "one may pierce the corporate veil in instances where fraud is involved and thus Citibank can be held liable for the actions of CitiMortgage allowing complete relief to be afforded without CitiMortgage." According to the plaintiffs, the third-amended complaint contains "more than enough specific allegations of fraud to warrant piercing the corporate veil."

### *Application of Legal Standard*

The plaintiffs' contention that CitiFinancial and Citigroup are nondiverse dispensable parties whose dismissal will not prejudice any party is not challenged by the defendants. The only issue before the Court is whether nondiverse defendant CitiMortgage is a dispensable party.

<u>Rule 19(b)(1) Factor: The Extent of Prejudice From CitiMortgage's Dismissal</u>

The plaintiffs concede that: (1) CitiMortgage is a "required party under Rule 19(b)(1)(B)(ii)" and "should be 'joined if feasible'"; (2) CitiMortgage "could be prejudiced by its own absence by incurring the risk of multiple or otherwise inconsistent obligations"; (3) "Citibank could be prejudiced by taking sole responsibility for a liability created by the absent CitiMortgage"; and (4) the plaintiffs "could be prejudiced in terms of non-monetary relief to prevent future fraud against others caused by CitiMortgage as CitiMortgage would not be before

the court and hence would not be bound by the judgment rendered." Therefore, no dispute exists between the parties that prejudice would attend to CitiMortgage, Citibank and the plaintiffs by CitiMortgage's dismissal from the action. Given that this action arises out of the plaintiffs' mortgage with CitiMortgage, and CitiMortgage has asserted a counterclaim for breach of contract, CitiMortgage is the real party in interest with the biggest stake in this action among the defendants. Thus, the extent of prejudice that would attend to it, Citibank and the plaintiffs from dismissing CitiMortgage from the action would be substantial. Consequently, this factor does not favor dismissal of CitiMortgage from the action.

<u>Rule 19(b)(2) Factor: The Extent to Which Prejudice Could Be Lessened or Avoided</u>

The plaintiffs contend that CitiMortgage can avoid prejudice from its absence in this action by an order from the Court dismissing it with prejudice. Using an order dismissing CitiMortgage "with prejudice" as a vehicle to cure the substantial prejudice that would attend to it from a judgment rendered in its absence implicates constitutional concerns because such an order is not a determination on a collateral issue and it "[signifies] a district court's assessment of the legal merits of the complaint." <u>Willy v. Coastal Corp.</u>, 503 U.S. 131, 137-38, 112 S. Ct. 1076, 1080 (1992) (citation omitted). Moreover, such an order could implicate constitutional concerns respecting CitiMortgage's counterclaim, which is also why using an order dismissing CitiMortgage "with prejudice" to cure the prejudice it would suffer from a judgment rendered in its absence, would be improper.

The plaintiffs contend that Citibank's prejudice can be "lessened by bringing a complaint against its own subsidiary unit CitiMortgage." Apart from imposing an undue and unjustified burden on Citibank to bring an action against CitiMortgage in case this action proceeds in CitiMortgage's absence, the plaintiffs do not explain how they reconcile their position that a

judgment rendered in CitiMortgage's absence would be adequate because "the corporate relationship between a parent and its subsidiary are sufficiently close as to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other," with their position that any prejudice to Citibank from CitiMortgage's absence can be "lessened by bringing a complaint against its own subsidiary unit CitiMortgage." Moreover, the plaintiffs do not explain how they reconcile their position that the prejudice to CitiMortgage from a judgment rendered in its absence can be cured by dismissing CitiMortgage "with prejudice" with their position that the prejudice to the plaintiffs from a judgment rendered in CitiMortgage's absence can be cured by, inter alia, rendering "a judgment [in CitiMortgage's absence] that, in practice, affects" CitiMortgage. Consequently, the plaintiffs' contentions about the extent to which any prejudice could be lessened or avoided must be rejected as meritless. This factor does not favor dismissal of CitiMortgage from the action.

Rule 19(b)(3) Factor: Adequacy of the Judgment Rendered in CitiMortgage's Absence

The plaintiffs' contention "that a judgment rendered in CitiMortgage's absence would be adequate" because "the business model and practices of CitiMortgage are the mortgage and business model and mortgage practices of Citibank," is insufficient to show the adequacy of a judgment rendered in CitiMortgage's absence. What relevance, if any, the business model and practices of CitiMortgage and Citibank have to a judgment that might be rendered in this action in CitiMortgage's absence is unknown, and no evidence exists in the record that supports the plaintiffs' contention about the business model and practices. Even assuming that the business model and practices of CitiMortgage and Citibank are the same, that fact alone would not demonstrate the adequacy of any judgment that might be rendered in CitiMortgage's absence or whether Citibank could be liable for the actions of CitiMortgage in CitiMortgage's absence. Thus,

this factor does not favor dismissal of CitiMortgage from the action.

### Rule 19(b)(4) Factor: Whether the Plaintiffs Would Have an Adequate Remedy If the Action is Dismissed

The plaintiffs contend they have no adequate remedy if this action is dismissed, "other than to refile the action without the nondiverse parties or file the action plead as a violation of 18 U.S.C. § 1964 which would provide federal subject matter jurisdiction." However, the plaintiffs do not explain why or how these remedies are not adequate if this action is dismissed. The Court finds that the plaintiffs do have an adequate remedy, if this action is dismissed for lack of subject-matter jurisdiction: bringing the action in state court. Therefore, this factor does not favor dismissal of CitiMortgage from the action.

The Court finds that nondiverse defendant CitiMortgage is not a dispensable party and its dismissal from the action would cause substantial prejudice to it, Citibank and the plaintiffs, from a judgment rendered in its absence. The plaintiffs have failed to show that Rule 19(b)'s factors favor CitiMortgage's dismissal from this action, pursuant to Rule 21. Accordingly, the Court finds that the plaintiffs failed to show that diversity jurisdiction exists in this action.

***Request for Leave to Amend the Third-Amended Complaint***

In their December 23, 2012 letter to the Court, the plaintiffs request leave to amend the third-amended complaint "to secure subject matter jurisdiction" by asserting a RICO claim, pursuant to 18 U.S.C. § 1964. In support of their request, the plaintiffs make citation to Official Publ'n Inc. v. Kable News Co., 884 F.2d 664 (2d Cir. 1989), contending this case involved "a similar situation to ours."

The defendants contend that the plaintiffs' amendment cannot serve to cure the lack of subject-matter jurisdiction and: (a) the plaintiffs did not show good cause for failing to assert a

RICO claim previously; (b) the proposed amendment will cause undue delay of the February 4, 2013 trial; (c) a RICO claim cannot be added as a basis for jurisdiction; (d) the defendants "will be severely prejudiced" by the amendment; and (e) the plaintiffs' request does not comply with Local Civil Rule 7.1 of this court.  According to the defendants, this action is unlike Official Publ'n Inc., because in that case "the plaintiff sought to re-plead a pre-existing RICO claim.  In the case at bar, the first mention of a RICO cause of action was in Plaintiffs' December 23, 2012 letter to the court."

The defendants are correct that Official Publ'n Inc. is inapposite because in that case, unlike here, the plaintiff's amended complaint asserted RICO claims.  See Official Publ'n Inc. v. Kable News Co., 692 F. Supp. 239, 244 (S.D.N.Y. 1988) ("The twelfth claim in the amended complaint seeks to recover civil damages under RICO.").  The Second Circuit affirmed the district court's dismissal of the RICO claims asserted in the amended complaint "insofar as they were based on §1962(c)," see Official Publ'n Inc., 884 F.2d at 667 ("We affirm the district court's dismissal of [the plaintiff's] RICO [claim], substantially for the reasons set forth in its opinion"), but reversed the district court's denial of leave to amend the complaint so that the plaintiff could "replead fraud with greater specificity" with respect to the RICO "claim under § 1962(a)," id. at 669.

The plaintiffs did not plead any RICO claim in their third-amended complaint and, consequently, there is nothing to re-plead.  The plaintiffs' December 23, 2012 letter is the first instance in which the plaintiffs mention their desire to plead a civil RICO claim.  However, the lack of subject-matter jurisdiction cannot be cured by amending the third-amended complaint over which the Court lacks subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss for lack of subject-matter jurisdiction, Docket Entry No. 135, is granted, and the complaint is dismissed, without prejudice. See Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 122 (2d Cir. 1999). The Clerk is directed to close this case.

Dated: New York, New York
April 8, 2013

SO ORDERED:

Copies mailed to:

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Robert Wheeler
Jo-Anna Rodriguez-Wheeler